United States of America v. Crabtree and other appellants and counsel are ready to go. We'll start with Mr. Mendez who represents Appellant Russo. Thank you very much your honor and good morning and may it please the court Joaquin Mendez on behalf of Dr. Russo. Unless at some point your honors have special inquiries in other areas I would like to focus my remarks on the correctness of the deliberate ignorance instruction and the sentencing issues particularly the enhancement the four-level enhancement for Dr. Russo's leadership role. As to the sufficiency argument of course we know that the jury must have found beyond a reasonable doubt that Dr. was false and that he willfully joined in the conspiracy to do so. We on this side of the courtroom all would like to be Dr. Abreu in the Wilder decision and and and the reason I think that that's important is because Dr. Abreu's conviction of course was vacated despite her presence in a large massive Medicare fraud scheme that resulted in billings of over 200 billion dollars and this court found that notwithstanding the existence of some evidence of that she should have known what was going on and notwithstanding some things that she admittedly did wrong the proof actually produced at trial was insufficient to support the conviction. Who was the owner of health care solutions? That was Armando Gonzalez. He testified at the trial right? Yes he did your honor. He did along with multiple directors and they all testified against Dr. Russo who earned more than eight hundred and seventy seven thousand dollars for admittedly signing whatever medical documents were put in front of them without review. He rarely if ever met with patients or reviewed their medical needs. He was a part of a conversation where another employee expressed concern over the quote bones in the closets the evil secrets of home of health care solutions. He was aware that they were recycling patients to increase billings. He was involved in conversations with employees where they were instructed to delete references to medications on patients profiles and so your argument is that evidence is insufficient upon which a reasonable jury could rely to conclude that he was a part of this conspiracy. My argument your honor is that evidence is a summary that is not exactly faithful to the actual testimony at trial. None of this is in the record? For example the argument that my client instructed Ms. Pampin to delete those medications the her testimony actually I'll quote was that it was at 836 908 it was Ms. Feas the one who told me to go ahead and delete it every medication referring to those so and and I could say the same thing about some of the other premises. For example it is true he would not have known that they were ineligible would fail. All I can say judge is that the direct testimony of knowledge is almost non-existent. The signing of all the documents that distinguishes from the Abreu case he signed dozens of documents wouldn't that indicate the knowledge of what was taking place? Well if he had ever read them or there been any evidence that he read them and unfortunately I'm here to argue someone who completely abdicated his responsibilities as a professional but there's no evidence that he read them that there evidence that he knew that they were false and the mere signing of the documents I submit is is insufficient and the the remark about the bones in the in in the business I went back to that again and again because what Mr. Lehman says it would have to take him for his word assuming that you know based on the jury's Dr. Rousseau what would happen if Dr. Manley ever learned about the bones in the closet so it's implicit in that remark that Dr. Manley was not told anything about the bones in the closet and and there's no discussion about what that means. So I understand and Judge Wilson I'm not arguing that there's a complete and total lack of evidence I don't think that's the standard or the I'm just you would think after that many years of association with these people that someone would say maybe Armando Gonzalez I told him I'm gonna pay you to do this and that they openly the other co-conspirators openly discussed the the conspiracy nobody did that with my client and that was a point of emphasis in the Wilner case. Thank you my time has exceeded I would only say that as to the role offense again the the basis for that for that increase was the the claim or the the the idea that he instructed people to delete medications I hope I've shown that that was not Dr. Rousseau and the deliberating this instruction I think it's laid out the case proceeded on the theory of actual knowledge by giving that instruction is my argument that it diluted the government's burden of proof. Thank you and by the way without objection from the government I would ask leave to adopt Mr. Kluge's argument on the dismissal of the juror I anticipated it would be done I tried to do it and I've absolutely just failed to do it in my reply brief. Thank you. Thank you counsel. Mr. Kluge. Good morning we've raised four issues and one of them is the dismissal of the juror issue I think that is perhaps the simplest issue although perhaps the most interesting issue is the collateral estoppel issue on the collateral estoppel issue our position is that the Larkin case in this circuit the Ohioan case in this circuit and the Supreme Court's decisions in Yeager and Bravo Fernandez make it absolutely clear that the government cannot go and request a Pinkerton instruction proceed at least in part on a Pinkerton theory and then when they lose all of the counts that everybody at least my client 100% there was no question. Why couldn't a rational jury conclude that the therapists were part of the conspiracy but still not liable under Pinkerton? Because of the again and this is the focus of the case law is a fact-specific focus it's not merely a theoretical there could be a case where that's true there could be some other case but in this case as the government's brief reflects where the government uses and argues to this court evidence that my clients failure to to respond affirmatively to deny her involvement in these very notes in the second trial this case was tried on the theory that this was the therapist role that all they had to do was produce these these notes and that that was the that was their function there they had they had to either be signed or somebody had to sign for them and that was their function that was the case there and what we in the first trial it was absolutely undisputed that the notes were false that they were part of the conspiracy the sole defense that the defendants made was to blind their eyes in their closing arguments they blinded their eyes to the Pinkerton instruction said my client had nothing to do with it but there were other there other purposes to the conspiracy and other objectives I mean for example in addition to the notes there were the sessions and the group therapy sessions instead showing movies or whatever the case may have been and so how would that so how how would you respond to that with respect to the acquittals on the substantive counts well first the government over read the Larkin rehearing decision are canary hearing there there was an affirmative basis for the court to say well the jury has not reached a decision on these substantive acts but has reached a decision on these substantive acts hence we will say that the government can go back and they cannot proceed in any way on this conspiracy in the manner that is addressed in the acquitted counts just the acquitted counts themselves in the manner so that entire even under that theory that that in you what you would be lopping off of this case is the the head the arms and the legs of the government's case against this defendant they didn't go back to the second trial and say okay forget about the false notes that was their case in the second trial just as was their case in the first trial it's their case in front of you now and so whatever theoretical possibility that might be from an interpretation even assuming that to be the case the instruction that was actually read and that was provided to the jury it seems to me that a reasonable jury likely understood it in its natural meaning which was so regarding a substantive count meaning the false statements if you have first found a defendant charged in that count guilty of the crime of conspiracy as charged in count one you may also find that defendant guilty of any crime blah blah blah so it seems to me the natural reading of this is that it does set up first finding the defendant charged first finding the defendant guilty of conspiracy as charged in count one as a precondition for finding liability under the Pinkerton instruction on the substantive counts and why wouldn't why wouldn't it be that a reasonable jury would understand it that way and not ever get to the substantive count since it mistried and hung on the since it hung on the conspiracy count well I first I note that the government is no longer relying on that theory because under Larkin that theory is no longer viable for them to argue Larkin unfortunately I wasn't able to come up with the Larkin decision in the district court but it came up on appeal fortunately and so we know that the law is that Pinkerton is not treated that way for purposes of the collateral stoppable argument as we have a direct holding by this court that is binding precedent on that issue secondly I think that it would be the one thing in the law that it was not a special verdict other than a special verdict nothing in the jury instruction in any case law I've ever seen on jury instructions treats that treats jury instructions that way and it would it's contrary to the actual law of Pinkerton it's contrary to the intended law attended purpose of Pinkerton and it's basically an afterthought that it was assuming that's true that still would not change the law of this circuit and the what the instruction instruct like every instruction is directed to each individual juror it doesn't say you can't look at this theory until all 11 other jurors agree agree with you so that while it's it's a novel idea it runs straight into precedent and I commend the government for giving up on that theory at this point the other issues that we raised are very substantial as well the issue of dismissing a juror with an objection to that yes it was certainly by my client and and certainly by by Mr. Russo but as the government points out all defendants have adopted all objections that would be an abuse of discretion on the part of the district court it seems to me that you could disagree as a matter of discretion but was it well was the abused the abuse is first of all in doing in dismissing the juror ex parte without even giving the defendants an opportunity in other words the court announces that at the district court came into court on this day after mr. Mendez had argued his case to this juror that who was who was an african-american as was his client the district court announces it starts court at 908 in the morning approximately two or three minutes after that says the jurors 15 minutes late and she's overslept I've told her I've told her I've excused her period bring in the jury nothing told to the jury about it because it's the first time that that juror was late I have reviewed that record from cover to cover more than once nobody was ever late the judge started one day the judge this particular judge has a practice of starting a few minutes early if it sets a case for eight o'clock lawyers know to be there some for you were you the trial were you a trial I wasn't in the courtroom at the case but I can read because they have the I mean the judge did say though that the juror had been late several times and I thought I may also be incorrect here but I thought the judge said I thought there was evidence in the record that the juror would be 45 minutes late not 15 minutes late that day so there's no but but here's the point there's nothing that refutes the judge's statement on the record that the juror had been late but there's you're saying just looking at the record it looks like that the jury that the juror wasn't late but there's nothing there's no objection or anything on the record or any correction there's nothing like that there is mr. Mendez it says that I says that's the first I've ever heard of anything like that and then mr. Rodriguez joins in this is this is not a made-up issue this is a judge who acted very precipitously because he was upset that the juror was how are the defendants prejudiced by the substitution of an alternate juror again even better than in the Larkin's situation with the Larkin case where I have a case directly on point I have peak week Kemp which is an unbunked decision of this court it says prejudice pardon it says how are we prejudiced how is he prejudiced he had just argued his case to to to one of the the few remaining African-American jurors he's got an African-American sure I mean I would feel prejudiced personally I would feel very prejudiced but and the other defendants are all minority minority group members it's it's there's prejudice to it the the point about it though is this court said in its unbunked decision you don't go there you don't look to and the Supreme Court it says you don't look to prejudice it's the juror been white male would is that the distinguishing characteristic here that it was replaced by a non-minority juror is it simply a question of exercise of discretion on tardiness I'm I'm simply responding to that if if the law were the case that you had to show that I really needed that particular jury we can show that in this case we don't have to show that in the law the law is that yeah you can't just say a juror a jurors a few minutes late I've kicked her off you can't I'm sorry that's an abuse of discretion and and to do it it doesn't matter the race issue doesn't matter here it matters if you're looking for prejudice but you don't look for prejudice if you're looking for prejudice it's there it's it's certainly there we lost another one another juror later on and and again that's when the issue was raised again by mr. Mendez because he's he's trying to keep some racial balance on the juror his client we join in the the point is it doesn't have to be prejudice the Supreme Court said it we cited that case the Davis case we cited the other cases we cited it says you have to this is not a little thing where somebody's oh you know you coughed once in court you're out so how long should the judge have waited he should have conducted a hearing on it and we should have phone and and we could have immediately addressed the matter but the judge had already ruled without even giving it the juror the defense a chance and at the time he ruled had excluded her it was sometime before 908 with court starting at nine o'clock in the morning so we don't know I don't we don't even know the context we have an ex-party conversation based on a we understand the argument I know I'm late on my time thank you Mr. Schwartz good morning your honors and my name is Ken Swartz on behalf of Ms. Crabtree I'm going to pick up on the argument regarding the collateral estoppel and I would phrase the the issue uh Judge Wilson in this manner that a truly rational jury concluding that the defendant Ms. Crabtree did not make a materially false statement in acquitted Ms. Crabtree of the conspiracy the delivery of health care benefits it was a substantive counts the counts six and seven were inextricably intertwined with this conspiracy to respond to Judge Rosenbaum's comment about there was evidence regarding uh other activity going on movies things that were not related to therapies that is exactly what these therapy notes were tied into the fact that there were other activities going on yet these therapy notes in the particular count six and seven were saying that these people were giving statements as if they were truly giving therapy being receiving therapy and acknowledging that their therapy was working and talking about how their therapy was working the Pinkerton instruction requires one element that is to find that these defendants were part of this defendant was part of a conspiracy and then these statements were made by this defendant or by others this jury acquitted the defendant of the substantive offense under those instructions and the element a a uh uh an element of that instruction was the conspiracy to say that the court the jury uh was hung on count one therefore the jury must not have considered that is a violation of the supreme court's case in Yeager which says you cannot interpret a hung count in deciding what the jury decided with regard to other counts in connection with collateral estoppel so it was error by the court below to say Yeager I mean to violation of Yeager to say well because they were hung therefore there's no way they would have considered the Pinkerton instruction the the court instructs them they must consider it that's what the law of the circuit is and they obviously did consider it because this these notes were completely intertwined that's what the government hammered away at they said the therapists were part of the assembly line and their role was to doctor clone they used the clone repeatedly in the oral and the final argument that they cloned those notes and the that was what the therapist did that's the exclusive thing that the therapist did in that trial thank you lady oh thank you uh your honors unless the court has any questions i'll sit down one question the indictment charges the specific notes that were at issue um but you take that now to be all of the notes where whether or not they have been charging the indictment well as a matter of fact in the first trial the government offered not just the two notes that were subject of count six and seven but an additional set of notes from pertaining to that patient and in those additional set of notes were cloned notes in other words where they would say the repeated same things time after time after time i cited that in the reply brief and there's a footnote i listed all of those so they went further in the first trial not limiting just those two counts but to many other notes from that therapist in the second trial they went back and even had agent rivera talk about how miss crabtree had made a false statement when she was questioned about those very same notes the very same notes that were the subject of the first trial that was an additional reason why there was a double jeopardy problems with the i'm sorry may it please the court off your web on behalf of the appellant lilliana marks i wanted to address judge rosenbaum concern about the jury instruction in the first trial your honor my response to to the question you previously asked is there's no or required order that the jury has to consider uh count one and then go to count two and eleven the pinkerton instruction is not optional a natural reading of the jury instructions could be that the jurors looked at or my right my client was counts 10 and 11 they looked at those notes in a vacuum they didn't consider count one they fully read pinkerton and when they read it they they determined they go through the steps of liability what she remembered the conspiracy did she act in furtherance did somebody act in furtherance of the conspiracy and was that act foreseeable those that's a natural reading that the jury considered fully those three elements and determined they rejected those and that's and when you read then another not that's another natural reading of the jury instructions um and also as counsel just said the court cannot look at the fact that uh count one they it was a hung jury at the ash decision the yeager decision johan decision says over and over that this court cannot look at what uh happens in a previous trial but the problem is we're not talking about what the jury instructions mean so we're not talking about what the actual outcome of the other trial was the problem is in looking in what the jury instructions mean if the jury instructions are written in such a way that the jury understands them reasonably to mean they stop at the point where it says if you have first found conspiracy because they haven't found that i mean that to me seems different than looking at what the meaning of and trying to read the tea leaves on what the meaning of um a hung jury on the conspiracy count was i agree with the honor that could be one possible reading of it but in this case i think there's two readings it doesn't explicitly say if you don't find the conspiracy count one then disregard all further pinkerton instructions when considering counts 10 and 11 there's just a if you don't find a it well it just gives out the pinkerton instruction what i'm saying is that there's two natural readings and my reading would be the jury considered 10 and 11 the pinkerton liability in a vacuum and my and my uh my argument is that if there's two natural readings it should the court should adopt the natural reading that sides with the defendant because it was the government who asked for pinkerton originally and i and i i might i might agree with you but i guess i'm not understanding the second natural reading that you're talking about so if you want to maybe well judgment okay in the first trial when it when it gives the pinkerton instruction if you find uh the defendant guilty of a conspiracy in count one you may also consider their liability it says if you first first right right but it doesn't explicitly say you stop considering pinkerton you i mean that the pinkerton liability instruction stops completely but what does first mean well they could look at it but we don't we don't know what goes on in the back of the jury room so they could look at counts 2 and 11 or they could have agreed on all sorts of things and it has to be what a rational jury and i think we start guessing we start looking at the hung count i think i think 10 11 have to be viewed there's no required order they could have started with counts 10 and 11 or the substance counsel then got the conspiracy last and they could have fully considered pinkerton and i think we have to look at why the government requested pinkerton in the first place they requested it because my client's defense as the other therapist was yeah those notes were fraud but i didn't do them that was wrong but we didn't do them so the government to counter that say well you didn't do them but you knew of it they asked for the pinkerton instruction so my argument is also that the government asked for the pinkerton instruction they can't you know they can't say well pinkerton doesn't apply or it's thrown out the window it's there it's just the same as charging conspiracy once again in 10 and 11 so i see i'm out of time and i thank you i think to some extent you are turning pinkerton on his head that is according to the instruction if you first found the defendant guilty of conspiracy then you could find them guilty even though they didn't participate in the crime seems to me what you're now arguing is a reverse if they didn't participate in a crime they they they are not and and it seems to me would violate the not only the express but the the spirit of this instruction because the way i view the instruction is they can it was the jurors are the law presumed that they will follow the instructions fully it doesn't presume well they're going to toss out pinkerton so my my argument is just that when they considered counts the substantive counts they fully went through a pinkerton instruction as they were instructed to and the government's they couldn't have done that because they found on the hung count no conspiracy but the argument to that is that they're not we're not allowed to consider what or take any inference from a from a hung count all right thank you mr webb we'll hear from the government may please accord james pierce united states i'd like to take the arguments in in the order that the defendants made them unless of course the court wants to go elsewhere briefly on defendant rousseau's sufficiency arguments judge wilson recited a continual signing of the documents without paying any attention to them uh the recruiting trip to north carolina and the bones in the closet comment the direction of the therapist to sign uh to conceal the fact that namanda and ericep these alzheimer's medications were should be omitted to avoid tripping sending any red flags to medicare that's more than sufficient evidence for the jury to have convicted the dr rousseau as it did i'd like to turn uh to the collateral stopple issues i think that's the one on which the court spent the most time before you before you uh leave the sufficiency of the evidence issue with regard to the therapist is my understanding correct that none of the therapists benefited financially from the alleged conspiracy not one uh no that's that that's not the government's understanding at all i mean the the therapists were receiving the funds as a result of their participation i mean they were drawing a salary they were not getting uh extra dollars but their involvement in the entire the entire hcsn health care solutions network was perpetrating fraud and they get more money depending on how many people they said were in the group therapy sessions yes they they receive more money if they had more patients in in the sessions so that's a perhaps the most direct way in which to show that they received there was one that was an intern what does that mean uh so uh salafia was an intern uh i don't think it frankly means much of anything she get paid she certainly got paid she got paid more than 150 000 over the time of the of the conspiracy now that was the the least of the therapist defendants that are before this court salary or as compensation correct for for her involvement for uh misrepresenting the nature of the quote therapy unquote that she was giving for writing fabricated notes for writing cloned notes she was then receiving compensation as were uh crabtree and in order to keep her job she had to write phony notes that's correct not not only write phony notes but also uh purport to give therapy that she was not actually giving do all the other fraudulent activities that the other therapists were doing with that i'll go ahead and turn to the collateral estoppel issue again unless the court has further questions on the sufficiency claims the core question in collateral estoppel which is a narrow exception to the general principle that the government can retry mistried counts is that if facts have been decided in a first valid proceeding they cannot be re-litigated in a subsequent proceeding and that and as questions from the from the court from judge rosenbaum point out the facts that the the the jury's verdict on counts 6 through 11 decided is that the therapists were not criminally liable for the six specific false statements in those notes that's it the indictment as judge robrano pointed out specifically charged those notes those that verdict on count 6 to 11 says nothing about to repeat to go back to the colloquy i just had with judge robrano uh the therapist's involvement in giving fake therapy so to speak the the therapist's involvement in both making omissions and commissions in their notes omitting the fact that they were only giving fake therapy uh and then saying they were providing certain kinds of therapeutic interventions which clearly they were not uh testimony from multiple witnesses bears that out so that is the at base the factual inquiry that that the collateral estoppel uh question calls for and that's the end of the case but isn't it a holistic view or approach for example at closing argument did you argue those six notes or did you argue that they had falsifies that all the notes that they worked with that they had cloned all the notes uh so the the argument at closing was was broader than just the six notes uh it was uh many of the facts i've already referred to about the the therapist's involvement but it was not however as uh as my colleagues on the other side suggest that the therapist's sole involvement was cloning notes and that therefore that was now i think that would pose a problem for us if our both our indictment and the trial evidence showed the jury acquits on those i i don't see how we could retry on on conspiracy but the ash inquiry is you look at the whole record you look at the charge evidence regarding those six notes we did yes and not the retrial at the retrial no no sorry at the first trial of course the jury uh rejected that there was no evidence of the retrial in fact one of the issues in the motion to dismiss on collateral estoppel grounds was also an evidentiary challenge the government said we will not put on of those notes there's a sort of a subsidiary dispute as i understand it now which is whether one of the agents had asked i think it's defendant crabtree about one of the notes and then crabtree made an incriminating statement and then whether that was put on at the second trial i've read the record it's not clear that it was one of the six acquitted notes but that actually it's not clear how that would matter it's not evidence of the note and then as to sort of back further up this okay to do to to use evidence that has been the basis of an acquittal which which makes sense i mean one single piece of evidence could be that could be relevant not only for something for which there's been an acquittal but also for uh counts that are still valid before the jury um but the shortest answer is no at the retrial the government did not put on evidence of those six notes it put on evidence similar to the first trial testimony from co-conspirators talking about the first of the whole fraud scheme at hcsn but also the more specific involvement of the therapists again the playing movies in their in their quote-unquote therapeutic sessions etc i want to speak briefly to larkin the larkin decision uh 1979 and then modified in 1980 i think that's a very difficult decision to make sense of i i would say that um both this court in ohion relied on it and then the fifth circuit in jaeger before it went up to the supreme court relied on it uh and after this the supreme court in jaeger reversed uh the fifth circuit on remand said well now this now the supreme court has overruled uh larkin i don't know as a matter of procedure in this somewhat particular situation where if the fifth circuit treats it as overruled uh this court sees it as still valid precedent it's the same precedential court how the court makes sense of that um but even if we say as far as this circuit is concerned jaeger remains good law jaeger does not preclude or did not preclude the retrial here i think at most jaeger stands for the proposition that when you've got a conspiracy and then you've got substantive counts that themselves charge objects of the conspiracy and the jury acquits on the substantive counts and the government has relied solely on a vicarious liability or pinkerton theory then the government is precluded at the retrial from trying those defendants uh to the extent they match up with those specific substantive counts that were the basis of the acquittal what about the defendants arguments that they have to match up because necessarily the the jury must have found the defendants not involved with the conspiracy as it related to those notes and if they weren't involved with the conspiracy as it related to those notes they couldn't have been involved in the conspiracy at all because those notes were effectively the conspiracy that that's that's too broad a reading of of the whole line of collateral estoppel cases and i think it's an unfair reading of the the relevant record both the charges and the evidence uh elicited at trial itself in bravo fernandez the case for the supreme court decided last term it spoke it specifically about using a guarded application quote guarded application unquote of the collateral estoppel doctrine in criminal cases that means you look to what the jury necessarily decided and so you can't just broadly say well the notes showed some kind of fraud so therefore the those fraud in those six notes covers the entire field of fraud that the therapists involved were involved with here and then not to repeat myself but but basically the that the therapist fraud was far greater than just these six notes it was a number of other notes it was not just cloning it was other types and it was this fraud in the therapeutic environment so under larkin under bravo fernandez uh yeager etc um and and there's the additional point i think judge rosenbaum you uh had the colloquy with a couple of my colleagues on the other side the jury instructions make clear that the jury should not any reasonable reading of the jury instructions from trial one says the jury doesn't even get to uh uh a conspiracy consideration uh because they they don't sorry they don't their acquittal can't work you backwards to conspiracy essentially doing the work that judge reyno said a flipping pinkerton on its head i'm happy to to address that further i'm sorry when you get to the tardy if you have some time to address that was going to move that direction to the to the to the dismissal of the juror i'm happy to respond to the to a question what's the sequence of events there so on the we're in the middle of closing arguments at this point the defendant and excuse me the government and uh and rousseau have given their closing arguments uh a the the judge comes out and says we have had a jury who is 45 minutes late as judge rosenbaum pointed out 30 plus 40 15 uh because i think uh mr mendez had gotten up and i'm going to go ahead and replace this juror uh at that point there was an objection saying well wait a minute the defense would like to be heard on this and the court said uh this juror has been late a number of times uh i i made clear at the outset i'm not sure the judge said at this point but the judge had made clear at the outset that being punctual was was a critical part of being a participating juror uh we're therefore going to call in an alternate uh and and go forward with the discretion of the district court maybe there were things that the court could could have done maybe calling a hearing would have would have made this the record a bit more fulsome for this court's analysis let's just talk about the factual record here sure so the defendants say that in fact this juror had not been late and that you could tell that by reviewing the um the transcripts and the times the trial started and if it started on time then clearly the juror must have been there what is your position on that so the record is not as full on this as one would like i think we have basically that representation as against as your honor put it the representation from the judge himself who said this juror has been late a number of times i i think when this court looks to construe errors on appeal it uses typically a clear error standard i don't think it would be error for the judge himself to have made the no if we go back and we look at the trial transcripts and i can't remember now if the judge started trial at eight or nine or whatever it was nor do i um let's say the judge started trial at eight and every day for the 15 day trial trial begins at eight o'clock in the morning i mean it seems like it would be contradicted that statement would be contradicted by the record and could be clearer under those circumstances if that's the case i don't know whether it is i did not do that at that level i think i'm going to after this after this hearing so i think that's fair although what it also doesn't take into account is is what time did the did the court direct the jury to arrive i mean the jury the court probably doesn't say court starts at eight get here at eight probably says get here with a bit of lead time i also did not undertake the analysis my colleague on the other side did to look at the specific start start time um and and again maybe it would have been better for the judge to have held a hearing on this but this is a discretionary standard and this is one where when you're in the i'm not sure that there was necessarily a hearing needed if the facts are as the court said they were i agree i'm not sure that that would have been an abuse of discretion but if the facts weren't as the court said they were that might change things and that's why i'm asking these questions and i and i and i don't have any as i said i didn't undertake the same analysis my colleague did to look and see at what time i took the judge's representation that this juror had this was not the first time this was a juror who had been late a number of times um and then let me also was this the only african-american on the jury i do not know i i don't know we would know that if we had a hearing that's correct and how many of the defendants were african-americans uh so dr rousseau was haitian-american uh and i don't know the uh the racial background of the other defendants you'll uh so the the question of of the defendants do have to establish prejudice this court or rather the the presidential fifth circuit in 1978 in rodriguez said that the mere fact that the jury's uh composition changes including a racial cop change to racial composition isn't enough to establish prejudice and this court in acevedo uh more recently said yes prejudice is something under rule 24c that the defendants have to show but the record here we do we wouldn't know what the racial makeup of this jury under this under this record i believe that's correct i believe there's nothing in this record that tells us other than the juror who was substituted the replacement juror was not a minority i believe that is that is on the record and even even the fact that the uh juror who was replaced was african-american i think that there are traces of that on the record it's it's not confirmed either i think one of the trial council gets up and says i believe the juror who was dismissed was an african-american um and sort of had already made the objection about uh about the substitution and i think was just making a record on that point um but again our core our core point here is this is an abusive discretion standard we are in the middle of closing arguments um this is a habitually late juror and the district court has ample discretion which it did not abuse under rule 24c in substituting out for an alternate juror i see my time is run i'm happy to answer any other questions or just sit down thank you mr pierce thank you mr mendez i was trial counsel so i feel compelled to add whatever i can on this issue even though i didn't brief it um judge rosenbaum when judge scola says to me when i give this juror a little more time and he says to me uh she's been day late several days i'm not about to have him be put on the stand and tell us how he came to that conclusion i that's all i need from judge scola to tell me at that point that he knows she's been late and i hear what you're saying although i think that it wouldn't be unprofessional or inappropriate to say i'm sorry your honor i my records show that she's been on time i know you've got a lot of trials um but unless unless you don't know that she's been on time or he's been on time right and i said i didn't know that and i didn't know that and i don't know that but except that judge scola said it and to me that ends the inquiry there especially if i'm going to be going out and trying the case the next few days with him but i do believe that that uh that the record will show that we began promptly but maybe she wasn't there as early as 10 or 15 minutes before trial just go that expects us to be there's a reference there where i walk in and he says don't worry you're not late you're just not early so i don't know what was going on but i do i did say that let's give her more time because judge wilson she was african-american did you point that out to the judge did you say to the judge judge she's our only african-american or she's african-american and she's going to be replaced by a non-african-american was that part of the discussion that was part of the discussion later on excuses another african-american juror and i beg him not not in the one before the court not on that date judge uh but when when he excuses another one and now i think we were left with maybe one african-american juror i beg just go please don't excuse this one because you already excused the other one and by the way there were bats and challenges during jury selection so i was very sensitive to that fact i did when you have a juror that you're making closing arguments so you do tailor your arguments to your jurors and that means whether they're men women older younger black and white and and i had argued my closing arguments with the knowledge that i have two or three african-american jurors that i wanted to connect to just as i did with the other persons but there are specific arguments concerning the amount of money my client made for example which i thought would resonate with an african-american juror who might say as i wish they would say that don't hold it against my client because he made all this money look at the expert who testified who was white she makes more money why can't he make as much money as she does for being a psychiatrist and on that issue of money judge he did make that eight hundred thousand dollars all i can say is that the lion's share of that was made in the first year where armando gonzalez the main co-conspirator says i gave him that money to help me develop the business it had nothing to do with the claims so armando gonzalez who has an opportunity he's given a softball to bury my client doesn't doesn't do that and that hearkens back to my argument that all these people could have said something directly that my client did or said and no one did and uh and then finally of course that dovetails with the role because if he was not there and if he's going to be held accountable for not having been there not having done his job well part of that is that he didn't exercise any control or supervision over anyone he was a medical director in name only and if he's going to get stuck with a conviction i beg you to consider the same set of facts in support of my request for a lower sentence on the role all right thank you thank you mr mendez mr clube um i have so many things i'd like to say and i'll be lucky to get one of them out i guess the 45 minutes a thing mr mendez did not ask for 45 minutes he asked for a few minutes and then i guess looking at his watch says 30 minutes ie to 9 30 and then the judge takes that and pushes it out and says well that means 30 minutes more beyond the 9 15 that they hadn't actually even gotten to yet that so that would be 9 45 so it wasn't like there was this is definite we have to have 45 minutes we don't we had no idea how long it was going to take the juror to get there because the judge had already told the juror don't even come in and and that's really problematic it's really problematic when you when the judge mr mendez saying i didn't i have no idea she's been late i think that's an objection mr salafi's counsel then joins in the objection and the record shows there was never a single moment's delay during for any juror so that this is a really important issue the government says rodriguez says you have to show prejudice but that's not how i read the en banc decision this court in pkmp and that's not how i i read the supreme court decisions that we cited in our in our case this is a pretty fundamental issue even apart from the particular focus on the on the other issues my client is the intern i i uh i don't know whether the court wants to indulge me a minute more or not we have your argument mr clue thank you thank you your honor in the brief time i would like to say that in this case no rational basis for there is no rational basis for miss crabtree the therapist to be acquitted of count six and seven the therapy false therapy notes counts and still for a jury to find her guilty of the these therapy notes were so important and solely the the role that the therapist played in this conspiracy it was all about their doing these notes which are allegedly false in order to doctor the file so that if there was an audit there would show therapy notes that was it for the therapists it is not too broad for the court to interpret the acquittal of those two counts to that she was not part of this conspiracy because those notes were everything if you go back and look at the closing argument by the government you'll see they hammered away at the notes thank you thank you mr schwartz mr webb i'll be brief i just want to focus it on the court's attention this was an overlapping conspiracy in usv out uh outred uh the three elements determine if there's one conspiracy or multiple is the object of the conspiracy um the was the the com whether i'm sorry the common goal of the conspiracy the nature of the underlying scheme and the overall and the uh the objective i'm sorry the overlapping of participants when you look at all three elements those are present here also i just want to argue that the government never produced one witness or one client uh former client said miss marks played movies there was the only evidence of that was from a flipped co-defendant thank you thank you thank you counsel and mr swartz i note that you were appointed to represent mr crabtree and the court thanks you for your service